WILKERSON *v.* CRESCENT INSURANCE COMPANY.

Opinion delivered April 24, 1897.

PRINCIPAL AND SURETY—RELEASE.—The surety on the bond of an insurance agent conditioned for the performance of his duties is not released from liability by the failure of the insurance company to advise the surety that his principal was in default for three years after learning of the same. (Page 82.)

Appeal from Craighead Circuit Court, Jonesboro District.

FELIX G. TAYLOR, Judge.

### STATEMENT BY THE COURT.

This action was brought by the Crescent Insurance Company against J. B. Wilkerson, as surety upon a bond given by S. L. Ingalls for the performance of his duties as agent of said company. One of the conditions of the bond was that the said S. L. Ingalls should properly account for and pay over and apply all sums of money which might be received by him as agent of said company. The defense set up by Wilkerson was that the insurance company had been negligent in securing and collecting the moneys that came to the hands of Ingalls; that Ingalls had been in default at the end of each year for several years; that the company, notwithstanding such default, suffered him to go on from month to month until he was insolvent; and that plaintiff's negligence and failure to discharge said Ingalls operates as a discharge of defendant.

The defendant Wilkerson testified, in substance, that he signed the bond sued on under the belief that Ingalls, as agent of the company, would be required to settle every thirty days; that he understood that this was the custom of all insurance companies; that had he been notified of the default, and that Ingalls was allowed further time to make settlement, he would have got off the bond.

Ingalls testified as follows: "I was the agent of the Crescent Insurance Company at Augusta, Arkansas, and executed the bond sued on. I was required by the insurance com-

pany, by the terms of my contract with them, to make monthly reports and remittances, and was furnished blanks for that purpose by the company. I did this for a number of years until I got behind. I think it was in October, 1891, when I first got behind with my monthly payments, and I was behind with them at the end of each month from October, 1891, until January 1, 1894. I never notified Mr. Wilkerson that I was behind. I had some correspondence with the company about the matter, and received some letters from them asking me to settle during the three years I was behind with them. I paid them as I could."

The case was submitted to the court sitting as a jury, who declared the law to be as follows: "When one signs a bond as surety of an agent of an insurance company, he is bound by his contract, and a mere delay to enforce the payment of premiums collected by the agent will not discharge the surety without an agreement between the agent and insurance company for an extension of time in which to make payments." He thereupon found in favor of plaintiff in the sum of $250, and gave judgment accordingly.

*P. R. Andrews* and *N. W. Norton*, for appellant.

Appellee cannot recover, after having had knowledge of the delinquency of the principal for these years, during which time it failed to advise the surety that his principal was in default. 11 Pac. 599; 10 So. Rep. 543, citing many cases; 18 Atl. Rep. 943; L. R. 7 Q. B. 666: 51 N. W. Rep. 200; 26 S. W. Rep. 47. This is not a case of mere delay, but a case of continuing to employ a servant after knowledge of his delinquencies, and of withholding the knowledge from the surety.

*J. C. Hawthorne*, for appellee.

It may be conceded that a failure to notify a surety for an *unreasonable* length of time of the neglect of an agent to remit premiums would release the surety, but mere negligence or failure to call the agent to account, or to enforce payment, will not discharge the surety. 64 N. Y. 385; *ib.* 231; 62 *id.* 88; 58 *id.* 441; 18 Atl. Rep. 943; 116 Mass. 275; 43 *id.* 522; 129 *id.* 73; 91 N. Y. 353; 11 Wheaton, 184; 21 N. J. L. 100.

6

RIDDICK, J., (after stating the facts.) The question presented for our consideration is thus stated by counsel for appellant: "Can the appellee recover from the surety, after having had knowledge of the principal's delinquencies for about three years, during which time the appellee failed to advise the surety that his principal was in default?" The answer to this question must be in the affirmative, for the failure of the insurance company to notify the surety of such default does not, in our opinion, discharge the surety. To discharge the surety the act of the creditor must be injurious to the legal rights of the surety. An agreement with the principal debtor extending time for payment or in any manner changing the contract will have that effect, but mere indulgence is not sufficient. *Clark* v. *Sickler*, 64 N. Y. 231; *Grisard* v. *Hinson*, 50 Ark. 229.

The inaction of the creditor will not discharge the surety unless it amounts to fraud or concealment, for the surety is bound to inquire for himself, and cannot complain that the creditor does not notify him of the state of the accounts of his agent for which the surety is liable. *Watertown Ins. Co.* v. *Simmons*, 131 Mass. 85; *Atlantic & Pacific Telegraph Co.* v. *Barnes*, 64 N. Y. 385.

This very question was considered in the case of *Watertown Ins. Co.* v. *Simmons, supra.* It was there held, under circumstances very similar to those in this case, that the law imposed no duty upon the insurance company either to dismiss its agent or to notify the surety of his default. "It is," said the court, "the business of the surety to see that his principal performs the duty which he has guarantied, and not that of the creditor."

In this case the amount for which the agent was in arrears was not large, and it seems reasonable to believe that the insurance company kept him in its employ with the expectation that eventually he would settle his accounts by paying the balance due. The company was not called on by the surety for information concerning the state of the agent's account, and there seems to have been nothing done by the company that amounted to either fraud or concealment. We therefore conclude that the judgment of the circuit court was right, and it is affirmed.