The UNLAUB COMPANY, INC.,
Plaintiff,

v.

Sam SEXTON, Jr., Defendant.

No. FS–76–69–C.

United States District Court,
W. D. Arkansas,
Fort Smith Division.

March 11, 1977.

Tom Harper, of Harper, Young & Smith, Fort Smith, Ark., for plaintiff.

Josef V. Hobson, of Sam Sexton, Jr., Fort Smith, Ark., for defendant.

JOHN E. MILLER, Senior District Judge.

## PLEADINGS

On April 22, 1976, plaintiff, The Unlaub Company, Inc., commenced this action to recover the sum of $54,177.00 with interest from July 22, 1975, at the rate of 6 percent per annum from the defendant, Sam Sexton, Jr., together with costs. It is alleged in the complaint that plaintiff entered into an agreement with Paul Rees Coal Co., a corporation organized and existing under the law of Oklahoma, with its principal place of business at Bokoshe, Oklahoma, in which the said coal company agreed to purchase from plaintiff four Simplicity Coal Mining Screen Units to be manufactured by Simplicity Engineering Company at Durand, Michigan, for a total purchase price of $67,-721.00, of which the said coal company or the defendant paid the sum of $13,544.00 as a down payment and agreed to pay the remaining $54,177.00 of the purchase price, plus applicable sales or use taxes, upon receipt of notice that the screen units were available to be picked up at Durand, Michigan, f.o.b. Said agreement was executed for Paul Rees Coal Company by the defendant as its President and duly authorized representative, and the performance of said agreement by the coal company was guaranteed personally by the defendant, Sam Sexton, Jr., and Robert Lane, in writing. Lane is believed and alleged by plaintiff to be a resident of Madisonville, Kentucky. A copy of the confirmation of the purchase order executed by the coal company, incor-

porating the aforesaid guarantees, is attached as Exhibit 1 to the complaint. Pursuant to the agreement the plaintiff at its expense caused said screens to be manufactured according to the agreement and order by Simplicity Engineering Co., and prior to July 22, 1975, plaintiff notified the Paul Rees Coal Company and the defendant by telephone that the coal mining screens were ready and available at the factory of Simplicity Engineering Co. at Durand, Michigan.

The coal company failed to take delivery of said screens and on July 22, 1975, plaintiff notified the defendant by letter, U. S. registered mail, to accept delivery of the screens and make payment of the balance due.

Neither the coal company nor the defendant Sexton have complied with the terms of the said agreement, although the plaintiff has made repeated demands upon them to do so. Said screens are still available for delivery in accordance with the terms of the agreement, but the coal company and the defendant Sexton have refused to accept the same and have breached the agreement, and are now liable for the balance on the purchase price.

On May 11, 1976, the court granted the motion of the defendant Sexton, in which he requested an additional period of 45 days beyond the date of answer to certain interrogatories propounded by defendant Sexton to plaintiff on May 11, 1976.

On May 25, 1976, all interrogatories were answered by plaintiff except interrogatory No. 8 to which objection was made by plaintiff and was sustained by the court.

On July 8, 1976, the defendant Sexton filed his answer in which it is admitted that plaintiff is a corporation incorporated under the laws of the State of Oklahoma and that he is a citizen and resident of Fort Smith, Arkansas. He further denied that the court has jurisdiction of this cause by reason of diversity of citizenship. Mr. Sexton also denied that he had paid the sum of $13,544.00 as down payment, and alleged that the coal company made such payment. He denied that the plaintiff has tendered delivery of the coal screens to the Paul Rees Coal Company. He further pleads affirmatively that the plaintiff is in violation of Ark.Stat.Ann., § 64–1201 (Supp.1975),[1] and that such violation of Arkansas Statutes subjects plaintiff to the penalty set forth in Ark.Stat.Ann. § 64–1202,[2] and that such contracts are not merely voidable but void ab initio. The defendant further alleges that the contract was executed within the State of Arkansas, and that the court is without jurisdiction over this entire matter since the contract cannot be enforced either in law or in equity.

On July 16, 1976, the plaintiff, The Unlaub Company, Inc., filed its reply to the answer of the defendant and motion to strike, in which it reaffirmed all the allegations of its complaint and incorporated the same in its reply by reference. The plaintiff denied that it is in violation of Ark. Stat.Ann., § 64–1201 and that it is not subject to the penalty of Sec. 64–1202 as asserted by defendant. The plaintiff further alleged that the execution of the contract herein sued upon was for the purchase by the Paul Rees Coal Company as alleged in the complaint of mining equipment,

---

1. "64–1201. *Filing of documents with secretary of state.*—Every company or corporation incorporated under the laws of any other State, territory, or country, including foreign railroad and foreign fire and life insurance companies, now or hereafter doing business in this State, shall file in the office of the Secretary of State of this State a copy of its charter or articles of incorporation or association, or a copy of its certificate of incorporation, duly authenticated and certified by the proper authority, together with a statement of its assets and liabilities and the amount of its capital employed in this State, and shall also designate its general office or place of business in this State."

2. Sec. 64–1202 provides in part:

"* * * any foreign corporation which shall fail or refuse to file its articles of incorporation or certificate as aforesaid, cannot make any contract in the State which can be enforced by it either in law or in equity, and the complying with the provisions of this act after the date of any such contract, or after any suit is instituted thereon, shall in no way validate said contract."

which machinery was to be manufactured in the State of Michigan and delivered to the Paul Rees Coal Company in the State of Michigan; that the execution of said contract by plaintiff did not constitute the doing or transacting of business in Arkansas. The plaintiff further alleged in its reply to the answer and motion to strike the alleged statutory defenses of the defendant Sexton that the said machinery was to be manufactured and held for delivery to the coal company in accordance with said contract for the use of the coal company in coal mining operations in the State of Oklahoma; that the contract was to be performed in the State of Michigan and the screens were manufactured for use by the coal company in the State of Oklahoma, and therefore "the execution of the said contract and the subject matter performance thereof was a transaction wholly in interstate commerce and, as a result thereof, plaintiff is not prohibited by Ark.Stat. § 64–1202 from maintaining this action against the defendant in this court, and that the said contract is neither voidable nor void on its face." That the court has jurisdiction over the subject matter of plaintiff's complaint and that the contract sued upon is enforceable in this court against defendant. Plaintiff prays that the affirmative defenses alleged by defendant be dismissed as failing to state a defense to the complaint, and that the same be stricken from defendant's answer and that plaintiff have relief as against the defendant as prayed for in its complaint therein.

On January 10, 1977, the defendant Sexton filed a motion for permission to amend the answer filed by him and heretofore referred to. In the motion to amend the answer he states that the knowledge required to assert some of the matters set forth in the amended answer was not acquired by defendant until after December 27, the date that the motion for summary judgment was filed. Attached to the motion is the proposed amendment to the answer and affidavit of Mr. Sexton. In the affidavit he states that he specifically authorized someone in his office to sign the purchase order or the guaranty letter. He further alleges that the screens are of standard type and could be used in any coal mining operation, and that therefore the plaintiff should be required to resell or otherwise dispose of the screens.

In the response to defendant's motion for leave to amend his answer the plaintiff has alleged that said motion is dilatory and that the alleged defenses are not available to defendant "in the light of the undenied allegations of the complaint and undisputed facts shown in the affidavits supporting plaintiff's motion for summary judgment," and that the court, in the exercise of its sound discretion, should deny defendant's motion.

## OPINION

In view of the questions raised and attempted to be raised by the parties and the length of the pleadings, the exhibits thereto, the affidavits and briefs, the court believes it should set forth a resume of the pleadings and motion in its consideration of the motion for summary judgment.

The defendant in his answer of July 8, 1976, alleged that plaintiff was in violation of Sec. 64–1201, Ark.Stat.Ann. (Supp.1975), since plaintiff, an Oklahoma corporation, has not complied with provisions of the above statute and as a result plaintiff could not "make any contract in the State which can be enforced by it either in law or in equity."

The plaintiff filed its reply and motion to strike on July 16, 1976, in which it denied that it is in violation of Ark.Stat.Ann., § 64–1201; that it has not in the past transacted and is not transacting any business in Arkansas which would require it as a foreign corporation to qualify to do business in Arkansas.

"4.

"Further answering, plaintiff states that the said machinery to be manufactured and sold to Paul Rees Coal Company in accordance with the said contract was sold and manufactured for use by Paul Rees Coal Company in coal mining operations in the State of Oklahoma;

that the contract was to be performed in the State of Michigan and was manufactured for use by Paul Rees Coal Company in the State of Oklahoma and, therefore, the execution by plaintiff of the said contract and the subject matter performance thereof was a transaxtion wholly in interstate commerce and, as a result thereof, plaintiff is not prohibited by Ark.Stats. Ann. Section 64–1202 from maintaining this action against defendant in this court, and the said contract is neither voidable nor void on its face.

"5.

"Replying further, plaintiff states this court has jurisdiction over the subject matter of plaintiff's complaint and that the contract herein sued upon is enforceable in this court against the defendant, and that the alleged affirmative defenses of defendant are insufficient to constitute a defense to the complaint."

On January 10, 1977, the defendant Sexton executed and filed an affidavit in which he stated that he is now and has been President of the Paul Rees Coal Company, an Oklahoma coal company, at all times since June 1974; that the books and records of which are kept and maintained in his law office at Fort Smith, Arkansas. About January 1, 1975, the Paul Rees Coal Company made a decision to construct a coal preparation plant at Howe, Oklahoma, and to accomplish that purpose, an agreement was made with Mullen Construction Company to erect the plant. Inquiry was made of other firms that had done business with The Unlaub Company through Unlaub's representative, Mr. Jim Jennings, and that they were particularly impressed with the local service and assistance available. Based upon this information he instructed Mullen's people to contact Jennings of Unlaub and to obtain quotes on the necessary items that they could purchase from them.

The necessary information was obtained and the order and specific instructions were given Unlaub to purchase for Paul Rees Coal Company of Simplicity Engineering Company at Durand, Michigan.

In his response to the motion to strike the plea of the plaintiff, defendant admits he executed the purchase agreement and his personal guarantee thereof upon which plaintiff's claim is based. The purchase agreement appears as Exhibit 1 to the complaint and is as follows:

"The Unlaub Company
Fort Smith, Arkansas 72901

"Paul Rees Coal Company
Fort Smith, Arkansas 72901

Gentlemen:

"This letter is to confirm in writing our agreement regarding your purchase from us of Simplicity screen units, as set forth in Proposal JM 041175–1, dated April 11, 1975, from Simplicity Engineering Company, which is incorporated herein.

"This proposal shall become your purchase order to us with a result that the total purchase price, F.O.B. Durand, Michigan, shall be $67,721.00 plus applicable sales or use taxes, of which your cashier's or certified check for 20% or $13,544.00 shall accompany your acceptance of this letter and the remaining $54,177.00, plus applicable sales or use taxes, shall either (i) be placed in escrow with a Fort Smith bank to be mutually selected by us on or before May 1, 1975, or (ii) Sam Sexton, Jr. and Robert Lane, the owners of all of the outstanding capital stock of Paul Rees Coal Company, shall personally guaranty full performance and payment of all obligations of Paul Rees Coal Company pursuant hereto. The balance of $54,177.00, plus applicable sales or use taxes, shall be paid to The Unlaub Company upon receipt by you of notice that the Simplicity screen units are available to be picked up by you at Durand, Michigan. Title and risk of loss shall pass to you at such time.

"If this is satisfactory, please accept this agreement in the space below and return it to us with your check for $13,544.00 payable to The Unlaub Company and provide us with either an escrow agreement for our

approval or the signatures of the Guarantors in the spaces provided below.

Very truly yours,
THE UNLAUB COMPANY
By /s/

"The foregoing is approved and accepted on 5/7/75.

PAUL REES COAL COMPANY

By /s/ Sam Sexton, Jr.
Sam Sexton, Jr., President and duly authorized representative

/s/ Sam Sexton, Jr.
Sam Sexton, Jr., as Guarantor

/s/ Robert Lane
Robert Lane, as Guarantor"

Is the alleged defense of defendant that plaintiff's failure to comply with Ark.Stat. Ann., § 64–1201, prevented plaintiff from making any contract enforceable in Arkansas as provided in § 64–1202 and that the contract is void ab initio available to the defendant?

Under the facts and applicable law the alleged defense is not available to the defendant. The document executed by the interested parties on May 7, 1975, Exhibit 1 to the complaint and heretofore set forth in full, shows on its face that it covers a sale and transaction solely in interstate commerce, and the transaction is not subject to § 64–1202, supra.

The law is well settled on this question. *Sillin v. Hessig-Ellis Drug Co.*, 181 Ark. 386, 26 S.W.2d 122 (1930); *General Talking Pictures Corp. v. Shea*, 185 Ark. 777, 49 S.W.2d 359 (1932); *W. T. Rawleigh Medical Co. v. Rose*, 133 Ark. 505, 202 S.W. 849 (1918); *National Distributors v. Simard*, 246 Ark. 774, 440 S.W.2d 31 (1969); *Goode v. Universal Plastics*, 247 Ark. 442, 445 S.W.2d 893 (1969); *Hogan v. Intertype Corp.*, 136 Ark. 52, 206 S.W. 58 (1918); *McLeod v. J. E. Dilworth Co.*, 205 Ark. 780, 171 S.W.2d 62, 322 U.S. 327, 64 S.Ct. 1023, 88 L.Ed. 1304 (1943); *Rose's Mobile Homes, Inc. v. Rex Financial Corp.* (W.D.Ark.1974), 383 F.Supp. 937; *Pratt Laboratories v. Teague*, 160 F.Supp. 176 (W.D.Ark.1958); *National Surety Corp. v. Inland Properties*, 286 F.Supp. 173 (E.D.Ark.1968); *Tailoring Co. v. Federal Trade Commission*, 153 F.2d 103 (7 Cir., 1946); *McComb v. Herlihy*, 161 F.2d 568 (4 Cir., 1947).

Although in 1966, in *Pacific National Bank v. Hernreich*, 240 Ark. 114, 398 S.W.2d 221 (1966), it was held a contract made in violation of § 64–1202 is void ab initio, it should be noted that our Supreme Court in later decisions (e. g. *UPI v. Hernreich* (1966), *National v. Simard* (1969), and *Goode v. Universal* (1969), supra), repeated its prior holdings that this section was not applicable to contracts which were the subject of transactions in interstate commerce.

In *Furst v. Brewster*, 282 U.S. 493, 51 S.Ct. 295, 75 L.Ed. 478 (1931), the U. S. Supreme Court (Chief Justice Hughes) stated the facts as follows:

"The plaintiffs, copartners doing business in Freeport, Ill., brought this suit in the circuit court of Bradley county, Ark., against James G. Brewster, of Warren, Ark., to recover for goods sold and delivered to him pursuant to a contract, the performance of which was alleged to have been guaranteed by the defendants E. A. Davis and H. M. Beaty. By the terms of the contract, the firm of Furst & Thomas agreed to sell and deliver to Brewster, on board cars at Freeport, Ill., or at their option at their nearest branch warehouse, at their current wholesale prices, their products in reasonable quantities as ordered by him, so long as the contract was in force and his account was in a satisfactory condition. Furst & Thomas agreed to give to Brewster free advice as to the best methods of selling to consumers the goods purchased by him under the contract. Brewster agreed to pay Furst & Thomas the regular wholesale prices, with specified discounts, the payments to be made weekly according to his cash sales and collections."

The defendants pleaded that the Furst & Thomas Company had failed to comply with the statutes of Arkansas, §§ 64–1201 and 1202. The court held that:

"These transactions were clearly in interstate commerce, whether or not Furst &

Thomas were agents of the Furst-McNess Company, and whether or not Brewster was an agent of Furst & Thomas. In pursuance of orders sent by Brewster in Arkansas to Furst & Thomas in Illinois, goods were shipped to Arkansas from the branch warehouse of Furst & Thomas in Tennessee. The ordering and shipment of the goods constituted interstate commerce, and the obligation to pay and the right to recover the amount due, according to the contract pursuant to which the goods were sent, arose in the course of that commerce. In *International Text-Book Company v. Pigg*, 217 U.S. 91, 107, 30 S.Ct. 481, 54 L.Ed. 678, 27 L.R.A.,N.S., 493, 18 Ann.Cas. 1103, this court quoted with approval the language of the Circuit Court of Appeals for the Eighth Circuit, speaking by Judge Sanborn, in *Butler Bros. Shoe Company v. United States Rubber Company,* 156 F. 1, 17, a case of consignments to a factor, that 'all interstate commerce is not sales of goods. Importation into one state from another is the indispensable element, the test, of interstate commerce; and every negotiation, contract, trade, and dealing between citizens of different states, which contemplates and causes such importation, whether it be of goods, persons, or information, is a transaction of interstate commerce.' Such commerce comprehends all the component parts of commercial intercourse between different states, and, according to established principle, any state statute which obstructs or lays a direct burden on the exercise of the privilege of engaging in interstate commerce is void under the commerce clause."

The court has jurisdiction because of diversity of citizenship, 28 U.S.C. § 1332, and the motion of plaintiff to strike the alleged statutory defenses of §§ 64-1201 and 1202, Ark.Stat.Ann., should be sustained.

The court next considers the motion of defendant for permission to amend his original answer of July 8, 1976. The motion was filed January 10, 1977, submitted therewith the proposed amendment. The court is not unmindful of Rule 15, Fed.R.

Civ.P., and that the allowance of amendments is within the sound discretion of the court. 3 Moore's Federal Practice, ¶ 1508[4], pp. 897–901, and 1976–77 Supplement.

In his answer the defendant admits he executed the purchase agreement and his personal guaranty thereof upon which plaintiff's claim is based, the same being attached to plaintiff's complaint as Exhibit 1. True, defendant avers that Paul Rees Coal Company and not defendant made the down payment of $13,544.00 as set forth in the agreement but, since the complaint's allegation is that this payment was made either by Paul Rees Coal Company or by the defendant, this constitutes no material issue of fact.

In paragraphs 4 and 5 of his answer defendant enters only a mere denial of paragraphs 4 and 5 of the complaint, except to deny in his paragraph 4 that plaintiff tendered delivery of the screens in question to Paul Rees Coal Company, and in paragraph 5, defendant affirmatively "avers" that plaintiff has not tendered delivery of the screens to Paul Rees Coal Company.

Plaintiff contends this denial is without basis in fact in view of the supporting affidavit of B. J. Coulter (Appendix A to the motion), which sets forth, as Exhibit 1 to the affidavit, the written notice to defendant that the screens were available for delivery to Paul Rees Coal Company in the form of a letter from C. J. Unlaub, Chairman of the Board of plaintiff, addressed to the defendant dated July 22, 1975, shown to have been sent by registered mail, with a photocopy of the registry return receipt, (Exhibit 4 to the affidavit) signed by Mary Riddle, as the agent of the addressee, on July 23, 1975, at Fort Smith, Arkansas. Plaintiff submits that defendant cannot successfully controvert Mr. Unlaub's letter of July 22, 1975, was received by the defendant.

The affidavit of William Johnston of Simplicity Engineering Company (Appendix C to the motion) shows that plaintiff has fully performed its obligations under the contract of sale and that Paul Rees Coal

Company has not, but has wholly breached the contract, performance of which was admittedly guaranteed by the defendant.

■ The court does not believe that there is any valid reason to permit defendant to amend his answer, and his motion should be denied.

On December 27, 1976, the plaintiff filed its motion for summary judgment under Rule 56, Fed.R.Civ.P. At that time the court had been unable to consider and act upon the motion of plaintiff to strike the alleged statutory defenses of defendant contained in its answer of July 8, 1976. The court has now considered and acted on both contentions of defendant and now reaches the motion for plaintiff for summary judgment, supported by affidavits of B. J. Coulter, President of plaintiff; Jim N. Jennings, President and General Manager of Unlaub-Ark., Inc., a wholly owned subsidiary of plaintiff; and William Johnston, Sales Manager of Simplicity Engineering Co. of Durand, Michigan. These affidavits are based upon the personal information of affiants and are supported by exhibits attached thereto.

In its motion the plaintiff alleges there is no genuine issue as to any material fact and that plaintiff is entitled to judgment in its favor as provided in Rule 56(c), Fed.R. Civ.P.

■ Plaintiff's complaint seeks to recover money from defendant on his guaranty of payment of a specified sum by another, Paul Rees Coal Company, of which defendant admittedly is an officer and stockholder. It is, therefore, highly doubtful that the provisions of the Uniform Commercial Code apply in this situation. Assuming, arguendo, that the Code is applicable defendant cannot avail himself of any of its remedies because of his admitted and undisputed failure to act seasonably to reject the contract or seek its recission. It does not appear anywhere in any pleadings before the court that defendant rejected or repudiated the contract within a reasonable time, as the Code requires he must. § 85–2–602(1), Ark.Stat.Ann. This will be further discussed below. In fact, the proffered Amended Answer does not even allege seasonable rejection or the failure to accept the screens from May 7, 1975, when notified and requested to accept and pay for them.

Defendant has admitted the execution of the contract of sale incorporating defendant's guaranty of its performance. Neither in his original answer nor elsewhere does defendant dispute his breach of the contract of sale and guaranty.

Defendant, as guarantor of the buyer, never exercised any right to reject or to repudiate the contract, and neither alleges nor states that he did. On the contrary, he admits executing the contract and that his principal, Paul Rees Coal Co., paid the agreed down payment.

The U.C.C., § 2–602, provides a buyer must reject the goods in a "reasonable time." No such allegation or showing is made here. See 17 A.L.R.3d 1010, et seq. (l.c. 1102–03). Tender to buyer is affirmatively shown by the affidavits supporting plaintiff's motion and not denied by defendant.

■ Hence, defendant breached the contract and this triggered seller's remedies under the U.C.C. These remedies generally include the right to "e" recover damages for nonacceptance, or in a proper case the price (§ 85–2–703(e), Ark.Stat.Ann.).

Section 85–2–709, Ark.Stat.Ann., provides:

"Action for the price.—(1) When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section the price

"(a) of goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer; and

"(b) of goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing.

"(2) Where the seller sues for the price he must hold for the buyer any goods which have been identified to the con-

tract and are still in his control except that if resale becomes possible he may resell them at any time prior to the collection of the judgment. The net proceeds of any such resale must be credited to the buyer and payment of the judgment entitles him to any goods not resold. "(3) After the buyer has wrongfully rejected or revoked acceptance of the goods or has failed to make a payment due or has repudiated (Section 2–610 [§ 85–2–610]), a seller who is held not entitled to the price under this section shall nevertheless be awarded damages for non-acceptance under the preceding section."

█ It is not disputed, except by inference, the manufacturer of the goods (Simplicity Engineering Company) submitted to plaintiff a proposal to manufacture the screens. (Exhibit 2 to affidavit of B. J. Coulter, App. A to plaintiff's motion). It is not disputed the screens were ordered by defendant's agent (Mullen Construction Company) for use in Paul Rees' mine in Oklahoma. The affidavit of William Johnston of Simplicity clearly shows these goods were a special order and not returnable, although plaintiff attempted to return them. Thus plaintiff has met the test of § 85–2–709, supra, of showing "inability to resell" and circumstances that indicate an effort to resell would be unavailing.

Because of defendant's failure to reject the goods and thereby breaching the contract, the Commercial Code defenses sought by defendant to be asserted in the amended answer are not available to defendant, and for that further reason the motion to amend the answer should be denied.

█ Defendant's contention that the complaint here is based upon the guaranty contract and not upon the purchase agreement is entirely without merit. The two are not separable. Paul Rees Coal Company agreed to buy the merchandise and the defendant Sexton guaranteed payment for the merchandise and performance of the contract to purchase by his own personal guaranty. By submitting the contract of guarantor to the defendant, The Unlaub Company did not engage in business in Arkansas, since the subject matter of the contract was clearly a subject of interstate commerce and the contract was to be performed through the instrumentalities of interstate commerce. The plaintiff, an Oklahoma corporation, submitted the contract to purchase from its office at Tulsa. If was executed by the defendant at Fort Smith, Arkansas. The screens were ordered for use in the State of Oklahoma. The purchase agreement with Simplicity Engineering Company shows, without refutation, the screens were to be manufactured in the State of Michigan, there to be delivered to the said Paul Rees Coal Company.

In *First National Bank of Helena v. Solomon*, 170 Ark. 555, 280 S.W. 659 (citing *Bank of Morrilton v. Skipper, etc.*, 165 Ark. 49, 263 S.W. 54), the court said that since the contract of guaranty was an original undertaking by the signers to pay the debt of a certain company the liability of the signers matured upon the failure of the debtor to pay the note, and it was not essential that the suit be commenced against the principal debtor before suit could be brought against the guarantors. The court went on to say:

"In making the loan to the Arkansas Crushed Stone Company, the First National Bank relied entirely upon the terms of the guaranty. The names of the guarantors were not signed to the note, and the contract of guaranty which was signed by them was written upon a separate piece of paper before the note was ever executed. So it will be seen that the circumstances under which the contract of guaranty was executed makes it an original obligation and the liability of the signers absolute and unconditional."

Here the undisputed facts, as shown by the affidavits of Jim N. Jennings and B. J. Coulter, are that The Unlaub Company would not enter into the contract to purchase with Paul Rees Coal Company unless the defendant would guarantee performance of the contract. This the defendant did.

See, also, *Gazette Publishing Company v. Stephens*, 199 Ark. 641, 135 S.W.2d 313, and

38 Am.Jur.2d p. 1077 (Guaranty § 74), where it said:

"The terms of the guaranty contract control the obligations of the guarantor. Thus, if the contract of guaranty is unconditional and does not limit in any way the obligations of the guarantor, the guarantor's liability will be equal to that of the principal debtor."

Since the buyer and defendant failed to perform the contract and thus breached it, plaintiff became entitled to invoke the remedies provided by § 85–2–703, Ark.Stat. Ann., including the right to recover the price. It is of interest to note that Official Comment No. 1 under § 85–2–703 states this article of the Code rejects the doctrine of election of remedy and that the remedies of seller are essentially cumulative in nature and include all of the available remedies for breach.

It is undisputed that the balance of $54,-177.00 is now due plaintiff from Paul Rees Coal Company or its guarantor, the defendant Sexton. It is not disputed that the screens in question were manufactured according to specifications submitted to the agent of Paul Rees Coal Company. It is not disputed that the screens have been tendered for delivery to Paul Rees Coal Company, which has refused to offer an explanation for its breach of contract, but, rather, defendant contents himself with attempting to seek refuge behind inapplicable and irrelevant provisions of the Uniform Commercial Code and the specious defense of lack of standing of plaintiff to sue on account of its status as a foreign corporation.

The equities here are quite clearly with plaintiff. The plain, unvarnished truth is the defendant pledged his word to plaintiff the contract would be performed and the screens made to the order of Paul Rees Coal Company would be paid for when manufactured, F.O.B., Durand, Michigan. On the strength of defendant's pledge and guarantee, and solely because of them, plaintiff executed the contract and ordered the screens. Defendant now seeks, for no good reason shown, to evade his obligation. He should not be allowed to do so.

There is no genuine dispute as to all facts involved, and the motion for summary judgment should be sustained and judgment entered against defendant for $54,-177.00, together with interest at the rate of 6 percent per annum from July 22, 1975, and costs.